UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN COLLEGIATE FINANCIAL SERVICES, INC., a Florida corporation,

    Plaintiff,

vs.   Case No.: 8:06-cv-2225-T-27MSS

COLOGY, INC., a foreign corporation,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** comes on for consideration of Defendant's Motion to Dismiss (Dkt. 3) (the "Motion") and Plaintiffs' memorandum in opposition thereto (Dkt. 5).[1] In the Motion, Defendant contends Plaintiff's complaint should be dismissed for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2) (2007).

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant, an Arizona corporation, is engaged in the business of providing comprehensive technology support, consulting services and integrated student loan origination and disbursement services to providers in the education finance industry. Plaintiff, a Florida corporation, is engaged in the business of assisting student and parent borrowers with student loan consolidation. On April 14, 2006, the parties entered into an

---

[1] This matter has been referred to the Undersigned for a Report and Recommendation pursuant to Title 28, United States Code, Section 636(b)(1)(B)-(C), Fed. R. Civ. P. 72, and Local Rules 6.01(a),(b) and 6.02(a), M.D. Fla. (Dkt. 7).

agreement whereby they agreed to negotiate the acquisition and sale of Plaintiff's assets to Defendant (the "agreement to negotiate"). (Dkt. 2 at ¶ 5) At the time the parties entered into the agreement to negotiate, Defendant was not registered or licensed to do business in Florida, it did not have a telephone listing or bank account in Florida and it did not own any real or personal property in Florida. Defendant did, however, market its services nationwide and send direct advertisements, i.e. "mailers," to numerous businesses and students in Florida. Additionally, Defendant maintained a software development employee who worked from his home in Florida for Defendant's Sacramento, California office and reported to Defendant's office in Arizona. Defendant's representatives also traveled to Florida on several occasions to meet with other potential clients similar to Plaintiff. The parties' initial meeting occurred in Florida while Defendant's representatives were in Florida for separate meetings with other potential clients.

Under the terms of the agreement to negotiate, the parties began to integrate products and services in anticipation of the proposed acquisition. Thus, Plaintiff sent all of its business to Defendant and Defendant paid Plaintiff's operating expenses. The loans Defendant acquired from Plaintiff under the agreement to negotiate were processed in Arizona but at least eight business meetings between the parties and all reviews of Plaintiff's assets were conducted by Defendant in Florida. Approximately five percent, i.e., $153 million, of the total loans referred to Defendant by Plaintiff under the agreement

to negotiate were connected to Florida.[2]

Ultimately, the parties did not enter into the final acquisition agreement. In the agreement to negotiate, the parties agreed that if a final acquisition agreement could not be reached by November 1, 2006, Defendant would "reconcile fees and provide [Plaintiff] with payment of all outstanding invoices, less operating expenses incurred during the [agreement to negotiate]." (Dkt. 2 at 14 ¶ 2) Payment of the fees was to be made to Plaintiff within thirty days of the reconciliation. If the operating expenses exceeded the referral fees, Plaintiff agreed to pay Defendant under identical terms. On October 23, 2006, Defendant sent Plaintiff an invoice of its service fees incurred during the negotiation process, which totaled $784,778.30. Defendant demanded payment be sent by Plaintiff to Defendant's office in Minnesota.

Plaintiff filed the instant action on October 30, 2006, in state court seeking a declaratory judgment and damages alleging Defendant breached the agreement to negotiate by charging fees to Plaintiff in the October 23, 2006, invoice that it was not authorized to charge under the terms of the agreement to negotiate and by refusing to provide Plaintiff with a referral fee for the loans referred during the negotiation process. Plaintiff contends it is entitled to a referral fee of approximately $730,000 and that such payment should be made to it in its office in Pinellas County, Florida. Defendant contends it never received an invoice from Plaintiff for the referral fees owed.

On November 27, 2006, Defendant filed a separate action against Plaintiff in

---

[2]Defendant estimated that three percent of the total loans it received from Plaintiff came from Arizona and the remaining loans came from the other forty-eight states.

Arizona state court for breach of the agreement to negotiate seeking the fees it incurred during the negotiation process. That case was removed to federal court in Arizona.[3] On November 29, 2006, Defendant filed a Motion to Dismiss in state court along with a notice of removal.[4] In the Motion, Defendant contends Plaintiff's complaint should be dismissed for lack of personal jurisdiction. Specifically, Defendant contends Plaintiff has failed to plead specific jurisdictional facts in its complaint sufficient to bring Defendant within the reach of Florida's long-arm statute. Further, Defendant contends Plaintiff has failed to establish that Defendant had sufficient minimum contacts with Florida prior to the alleged breach of contract to satisfy the constitutional due process requirements.

## II.  STANDARD OF REVIEW

In a federal diversity action, whether the court has personal jurisdiction over a nonresident defendant is determined by the law of the state in which the court sits. Jet Charter Serv., Inc. v. Koeck, 907 F.2d 1110, 1112 (11th Cir. 1990); Prentice v. Prentice Colours, Inc., 779 F. Supp. 578, 581 (M.D. Fla. 1991). Under Florida law, the burden of establishing personal jurisdiction over the nonresident defendant rests with the plaintiff. Future Tech. Today, Inc. v. OSF Heathcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000). That is, the plaintiff must allege sufficient facts to "support a reasonable inference that the defendant can be subjected to jurisdiction within the state." Bracewell v. Nicholson Air Servs., Inc., 680 F.2d 103, 104 (11th Cir. 1982); see Future Tech. Today, Inc., 218 F.3d

---

[3]Defendant has informed the Court that the Arizona action is stayed pending final resolution of the jurisdictional question raised here in its Motion.

[4]Defendant filed a notice of removal contemporaneously with the Motion. The case was removed to this Court on November 30, 2006.

at 1249. However, Plaintiff is not required to plead detailed factual allegations in the complaint. That is to say, "the pleading of long-arm jurisdiction under the Florida Rules of Civil Procedure is not an exercise in detailed factual allegations. . . . [P]leading the basis for long-arm jurisdiction is essentially "notice" pleading. It is enough for the pleader to indicate the statutory provision under which the action is traveling." McCarter v. Bigfoot Indus., Inc., 805 So. 2d 1028, 1032 (Fla. 4th DCA 2001); see Coca-Cola Foods v. Empresa Comercial Internacional De Frutas S.A., 941 F. Supp. 1175, 1178 (M.D. Fla. 1996) (stating that a "plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the applicable state [long-arm] statute; it is not necessary to plead the supporting facts."); Fed. R. Civ. P. 8(a)(1) (2007) (stating that a complaint shall include a "short and plain statement of the grounds upon which the court's jurisdiction depends"); Fla. R. Civ. P. 1.070(h) (2007) (pleading the basis for long-arm jurisdiction is notice pleading). In evaluating the sufficiency of a complaint in light of a motion to dismiss under Rule 12(b)(2), the pleaded facts must be accepted as true "to the extent they are not controverted by the defendant." Meterlogic, Inc. v. Copier Solutions, Inc., 126 F. Supp. 2d 1346, 1352 (S.D. Fla. 2000); see Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 994-95 (11th Cir. 1983).

Once the plaintiff meets its burden, the burden shifts to the defendant to make a *prima facie* showing that the long-arm statute does not apply. Future Tech. Today, Inc., 218 F.3d at 1249. If the defendant meets this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent

proof. Id. Where the evidence conflicts, the court must view all reasonable inferences in the light most favorable to the plaintiff. Meterlogic, Inc., 126 F. Supp. 2d at 1352.

On June 11, 2007, the Court held an evidentiary hearing on Defendant's Motion. In support of its Motion, Defendant submitted the affidavit and testimony of Mr. Paul Rehnberg, Defendant's President and Chairman of its Board of Directors. In response, Plaintiff submitted the affidavit and testimony of Mr. Richard Guillot, Plaintiff's Vice President and Director. At the conclusion of the hearing, the parties agreed that, in addition to the allegations in the complaint, the Undersigned could consider the evidence presented at the hearing and the affidavits filed in support of and in opposition to the Motion. Upon consideration and for the reasons that follow, the Undersigned **REPORTS** and **RECOMMENDS** that Defendant's Motion be **DENIED**.

## III.   DISCUSSION

In Florida, a court must conduct a two-part analysis when deciding whether it has personal jurisdiction over a nonresident defendant. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996); Venetian Salami Co. v. J.S. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). First, the court must determine whether the Florida long-arm statute provides a basis for personal jurisdiction over the nonresident defendant. Sculptchair, Inc., 94 F.3d at 626. If the requirements of the statute are satisfied, the court must then determine whether sufficient minimum contacts exist between Florida and the defendant such that the exercise of the court's jurisdiction over the nonresident defendant would not offend "traditional notions of fair play and substantial justice." Id.

### A. Personal Jurisdiction Over Defendant Is Proper Under Florida's Long-Arm Statute, Fla. Stat. § 48.193.

Plaintiff contends the Court has personal jurisdiction pursuant to Florida's long-arm statute, Fla. Stat. § 48.193. Specifically, Plaintiff asserts that Sections 48.193(1)(a) and (g) permit the Court to exercise jurisdiction over Defendant for "[o]perating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida]" or "[b]reaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(1)(a) and (g) (2007). The jurisdictional allegations in the complaint include a statement that Plaintiff is a Florida corporation "with its principal place of business in Pinellas County, Florida," that Defendant is an Arizona corporation "with its principal place of business in Maricopa County, Arizona" and that "[t]his Court has jurisdiction pursuant to Fla. Stat. § 48.193." (Dkt. 2)  Under Florida law, Plaintiff has sufficiently pleaded the basis for long-arm jurisdiction. See McCarter, 805 So. 2d at 1032.

Additionally, with respect to Section 48.193(g), Plaintiff need only establish the existence of a contractual duty to perform some act within the state of Florida. See Posner v. Essex Ins. Co., 178 F.3d 1209, 1219 (11th Cir. 1999); Unger v. Publisher Entry Serv., Inc., 513 So. 2d 674, 676 (Fla. 5th DCA 1987) (quoting Kane v. Am. Bank of Merritt Island, 449 So. 2d 974 (Fla. 5th DCA 1984) ("the legal presumption that a debt is to be paid at a creditor's place of business is 'sufficient to satisfy the language of Florida's long-arm provision that refers to contractual acts 'required' to be performed in Florida'")). Here, Plaintiff has alleged that Defendant breached the agreement to negotiate by failing to

provide Plaintiff "with [a] proper referral fee for the loans refered [sp]." (Dkt. 2 ¶13,21,36) Under the agreement to negotiate, which is attached as an exhibit to the complaint, if the parties did not finalize the sale of Plaintiff's assets to Defendant by November 1, 2006, Defendant was to "provide [Plaintiff] with payment of all outstanding invoices" with payment to be made to Plaintiff. (Dkt. 2 at 14 ¶ 2) While neither the complaint nor the agreement to negotiate state directly the precise location of payment, viewing all reasonable inferences in the light most favorable to Plaintiff, Plaintiff is seeking damages for breach of an agreement to pay referral fees that were to be paid to its principal place of business in Pinellas County, Florida. Thus, Plaintiff has satisfied the requirements of Section 48.193(g) of Florida's long-arm statute.

### B. Personal Jurisdiction Over Defendant Is Proper Under the Constitution.

Next, the Court must consider the due process implications of subjecting Defendant to the Court's jurisdiction. To conduct the due process analysis, the Court must first determine whether Defendant had sufficient "minimum contacts" with the state of Florida. Sculptchair, Inc., 94 F.3d at 630-31. If so, the Court must examine whether jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice." Id.

To determine whether a defendant has had minimum contacts with the forum state, the Court must consider three issues: (1) whether the defendant purposefully availed itself of the forum state; (2) whether the cause of action arose out of activities of which the defendant purposefully availed itself; and, (3) whether it was reasonably foreseeable that the defendant should anticipate being haled into court in the forum state. Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985); Posner, 178 F.3d at 1220. The "purposeful

availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated" contacts with the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 299 (1980).

Here, the facts adduced through the parties' affidavits and the testimony at the hearing clearly establish that Defendant has had the requisite "minimum contacts" with the state of Florida. As noted above, Defendant held itself out as a nationwide provider of services to companies within the education finance industry prior to the parties' agreement to negotiate. In fact, Defendant's President, Mr. Rehnberg, testified that Defendant had provided its services to several businesses in Florida, including, but not limited to, Post Collegiate Financial Services, SunTrust Bank and Student Loan Xpress. Defendant marketed its services to these businesses and Florida students through direct advertisements, i.e. "mailers." Additionally, Defendant concedes it maintained an employee in Florida prior to the alleged breach. Further, the evidence establishes that Defendant traveled to Florida on several occasions to solicit business from companies similar to Plaintiff. Specifically, Mr. Rehnberg testified that he was scheduled to travel to Florida to solicit business from another Florida corporation at the time Plaintiff contacted Defendant about the proposed acquisition.

With respect to the contract at issue, it is undisputed that the parties' initial meeting occurred in Florida. Further, at least eight business meetings between the parties and all reviews of Plaintiff's assets were conducted by Defendant in Florida. In 2006, Defendant earned significant revenue from business generated in Florida in connection with the

loans referred by Plaintiff under the agreement to negotiate. Mr. Rehnberg testified that in 2006 Defendant earned $19 million in gross revenue. Of that $19 million, he estimated that approximately twenty percent of Defendant's revenue was connected to Florida. Specifically, Mr. Rehnberg testified that approximately fifteen percent ($3 million) was derived from Defendant's dealings with Plaintiff, a Florida corporation, and approximately five percent ($1 million) was derived from business generated in Florida that was not connected to its business dealings with Plaintiff. He conceded that the amount of gross revenue attributable to Florida in 2006 was not *de minimus*.

Based on these facts, the Court finds Defendant's contacts with the state were not "random, fortuitous or attenuated." World-Wide Volkswagen Corp., 444 U.S. at 299. Furthermore, because Defendant knowingly entered into a contract to negotiate the purchase of assets of a Florida corporation, the Court finds Defendant purposefully availed itself of the privilege of conducting activities in Florida. Finally, as Defendant entered into an agreement to negotiate that called for any payment that might be owed to be made to Plaintiff, a Florida corporation, in the event the final acquisition agreement was not finalized, Defendant should have anticipated being haled into court in Florida in regard to a dispute concerning that payment. Thus, Plaintiff has demonstrated that Defendant has had the requisite minimum contacts with the state of Florida.

Next, to determine whether exercising personal jurisdiction over Defendant would offend "notions of fair play and substantial justice," the Court must consider "the burden on [Defendant] of defending the suit in Florida, Florida's interest in adjudicating the suit, [Plaintiff's] interest in obtaining effective relief; the interests of the interstate judicial

system in using resources effectively; and, the interests of the states in furthering shared substantive policies." Posner, 178 F.3d at 1221. With respect to the burden placed on Defendant to defend this action in Florida, it is expected that litigating in a foreign jurisdiction involves some burden. However, "modern methods of transportation and communication reduce this burden significantly." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 259 (11th Cir. 1996) (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The only other conceivable burden by Defendant is the burden associated with litigating dueling federal court lawsuits in separate jurisdictions that arose out of the same agreement to negotiate. However, as stated above, Defendant initiated the Arizona lawsuit against Plaintiff after this action was filed and two days before filing its Motion and notice of removal in this case. It cannot now be said to complain about a burden it created after it had notice of the instant litigation. Further, it appears the Arizona court may defer to this Court on the grounds of comity or preservation of judicial resources in light of the "first filed" status of the Florida federal court action.

Further, the state of Florida has an interest in adjudicating this dispute as it involves one of its corporate entities which was allegedly damaged by an out-of-state entity. Plaintiff has an interest in resolving this dispute in Florida where it is based and primarily conducts its business. Finally, Defendant does not assert any reason, and the Court can conceive of none, that having this case litigated in Florida would frustrate the states' interest in using resources effectively or its interest in furthering shared policies. As such, subjecting Defendant to the jurisdiction of this Court would not offend traditional notions of fair play and substantial justice.

11

## IV.   CONCLUSION

In light of the foregoing, the Undersigned respectfully **REPORTS** and **RECOMMENDS** that the Court **DENY** Defendant's Motion (Dkt. 3).

Respectfully **RECOMMENDED** in Tampa, Florida on this 2nd day of August 2007.

MARY S. SCRIVEN
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies furnished to:

Presiding District Judge
Counsel of Record